**Marku, Appellant, v. Union & League of Romanian Societies of America, Inc., et, Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23212.   Decided August 17, 1954.

Novak N. Marku and John R. Vintilla, Cleveland, for plaintiff-appellant.
Richard H. Woods, Cleveland, for defendant-appellees.

(DOYLE, PJ, STEVENS, J, HUNSICKER J, of the Ninth District sitting by designation in the Eighth Appellate District.)

## OPINION

By HUNSICKER J:

This is an appeal on questions of law and fact from the Court of Common Pleas of Cuyahoga County, Ohio.

Novak N. Marku filed an amended petition in the trial court against the Union & League of Romanian Societies of America, Inc., and its president, its secretary, and its attorney, in which amended petition he alleged in substance that: he is the president of one of the constituent member societies of the corporate defendant herein; he is the holder of a death, sick and accident benefit certificate in such corporate defendant; he is president of a branch society of the corporate defendant; he signed for the year 1952 a loyalty affidavit and sent it to the corporate defendant, as required by the bylaws of the Union & League of Romanian Societies of America, Inc.; he, at the request of the corporate defendant, attended an executive committee meeting on March 8, 1952, as a delegate and representative of the branch member society Traian & Iuliu Maniu Society of Canton, Ohio, to

answer certain charges made against his branch society by the officers of the corporate defendant; he was not allowed to be heard or defend as a delegate of his society; the executive committee suspended until the next convention his society and placed him (Novak N. Marku) under "accusation" until the forthcoming convention of the corporate defendant, to be held at Lorain, Ohio, in September 1952; he was duly elected a delegate to this convention by his branch society, but that "the individual defendants Joseph J. Cracium and George Dobrea, as president and secretary, respectively, of the corporate defendant, refused to approve the plaintiff, Novak N. Marku," as a delegate; he was denied a seat as a delegate, was tried by a grievance committee without having been notified personally or in writing of any charges. and "without being given notice and an opportunity to appear, be heard and defend against any charges before the committee of the convention body"; the convention body, upon recommendation of the grievance committee, expelled him from the branch society and the corporate defendant organization; the actions of the officers of the corporate defendant in denying the member society "Traian & Iuliu Maniu" of its rightful representation in the convention and the refusal to seat the plaintiff (Marku) as the representative of the member society "were in wreckless (sic) disregard of the material and fundamental rights of 192 members of said society * * *"; he "has exhausted all the remedies available to him within the defendant·corporate organization and has no adequate remedy at law."

For a second cause of action, Marku says: he made demand in writing on the corporate defendant on July 15, 1952, for an inspection of the books and records of the corporate defendant, which demand was refused; he was told he could examine the books and records at the convention to be held in Lorain, Ohio, in September, 1952; he presented himself at the convention as a delegate of his member society, and again asked to see the books, records and financial reports of the corporate defendant, which request was again refused; the corporate defendant is wilfully withholding from the plaintiff. Marku, information in which this plaintiff has an interest.

The prayer of this petition asks that the corporate defendant and the individual defendant officers be enjoined from "denying and/or depriving the plaintiff of any or all of his rights, interest and privileges as a member of the society, 'Traian & Iuliu Maniu' and the corporate defendant 'The Union & League R. S. A., Inc.,' directly or indirectly or in any manner whatsoever"; that plaintiff, Marku, be restored to all of his rights as a member in such societies; and that a mandatory injunction issue, requiring the corporate defendant and the appropriate officers thereof "to permit the plaintiff and his attorney and agents to inspect all of the books, records and accounts of the defendant corporation, Union & League R. S. A., Inc.," etc.

A joint answer to this amended petition has been filed by the defendants, in which they say that: plaintiff, Novak N. Marku, "is not a member of the defendant corporation, the Union & League of R. S. A., Inc., having been excluded by the convention held September 5, 1952"; this convention refused to accept plaintiff, Marku, as a delegate or membr of the convention; the plaintiff, Marku, did not, as an officer of his branch society, file a proper loyalty affidavit, but did mislead his branch society "Traian & Iuliu Maniu" by forwarding to the corporate defendant an improper loyalty

affidavit, in violation of the constitution, bylaws and regulations of the Union & League of R. S. A., Inc., and of "Traian Iuliu Maniu Society."

The defendants, by way of further answer, say that they "have no knowledge of any inquiry from this plaintiff as to any information he desired from the defendant corporation. They further allege that the fraternal insurance laws of Ohio provide the "manner in which plaintiff may procure information which he desires if it has been refused by the defendant corporation, and, therefore, plaintiff has an adequate remedy at law * * *."

As a second defense, the defendants say that: "* * * the plaintiff has not been denied his rights and has not complied with the constitution and bylaws, rules and regulations of the parent organization, the defendant corporation the Union & League of R. S. A., Inc., and those of the subordinate society in which plaintiff was a member. and that the plaintiff has not exhausted all of his remedies within the organization as to his rights and that he has an adequate remedy at law."

Thereafter, the within action was heard in the trial court on the issues made by these pleadings, immediately following two companion actions. The testimony and evidence received in the companion cases (Nos. 643,431 and 643,463 in the Common Pleas Court, which were thereafter appealed and became No. 23,211 in the Court of Appeals, and have also this same day been decided by the Court of Appeals), so far as applicable herein, has been adopted as a part of the evidence in this case, and, together with additional testimony and evidence, compromises the record before this court.

The record is long, involved, and replete with extraneous matters. Reduced to a single proposition the question in this case revolves around the validity of a loyalty affidavit sent by the corporate defendant herein to the branch society and their officers in 1951, for the purpose of having such loyalty affidavit executed by the officers elected to manage the affairs of the branch or member societies for the year 1952.

At the convention of the Union & League R. S. A., Inc., held at Youngstown, Ohio, in September, 1948, a resolution was adopted, providing that all officers of this corporate defendant and of its member societies should sign a loyalty affidavit. This resolution, adopted in the Romanian language, is (translated to English) substantially as follows:

"The officers of the Union and League and officers of the societies which compose the Union & League shall be obligated to sign a declaration through which they state that they are not Communists; that they do not belong to any subversive organization which works against the Constitution and Laws of the United States of America."

A form of affidavit was later prepared by the officers of the corporate defendant, pursuant to authority granted by their constitution and bylaws; and, pursuant to a specific resolution of the convention, such affidavit was printed by the corporate defendant. This form of affidavit was executed by the proper persons without question or objection.

In 1951, for the officers elected to act in the year 1952, a new form of loyalty affidavit was prepared and forwarded to the member societies and their newly elected officers. This new form of affidavit was prepared after an executive meeting in March, 1951, at which a resolution was adopted directed to those members who believe in subversive activities, whether Facist, Nazi, Communist, or other un-American. This meeting decided that

no such member could be an officer of the corporate defendant or of a branch society.

The plaintiff herein, Novak N. Marku, did not execute such new loyalty affidavit, although he did sign a loyalty form under protest, after a number of requests by the officers of the corporate defendant to execute the loyalty affidavit, directed to him and the branch society of which he was a member.

Upon receipt of the signed but unexecuted loyalty form, sent to the Union & League R. S. A., Inc., by Marku, the officers of that body, the corporate defendant herein, requested that a delegate be sent by "Traian & Iuliu Maniu," the branch society, to a meeting of the executive committee to be held in Cleveland, Ohio, in March of 1952. The plaintiff, Marku, appeared at this executive committee meeting but was not accepted as a proper delegate of his society.

All of the proceedings of the several conventions and of the several executive committee meetings were reported in the official publication of the Union & League R. S. A., Inc. At the executive committee meeting in March, 1952, "Traian & Iuliu Maniu," and the plaintiff, Marku, were placed under "accusation" until the convention of 1952. It was after this action of the executive committee that Marku sought to examine the books, records and financial reports of the corporate defendant herein.

There is no need in this opinion to set out all of the various powers and duties of the corporate defendant, its officers, executive committee, member societies, and individual members. This court has read and examined carefully the constitution and bylaws of the parent body, copies of which are made a part of the record. We do wish, however, to point out that, according to Article IV, Section 6, of the bylaws, a member "under indictment or accusation by any forum of the member societies or of the central organization" was not eligible to be elected to office. In conjunction with this article and section, Article II, Section 13, of the bylaws, said:

"The member societies shall elect their officers by secret ballot in the month of December of each year who shall be installed in office at the following January meeting. They shall report the names of their newly elected officers immediately after every election, to the central office for the approval of their qualifications. In case any newly elected officers shall not be qualified in conformity with the bylaws of the U. & L. R. S. A., Inc., the president or secretary shall notify the member society to that effect and a new election for that office shall be held at the following meeting. Any appeals by the member society as to the qualification of a newly elected officer must be made to the executive committee which shall have full power to make the final decision. In such cases the members or member societies are strictly forbidden to appeal to the civil courts."

If the officers had the authority to present to the member society and its newly elected officers the new form of loyalty affidavit, which this plaintiff, Novak N. Marku, did not execute, then all action thereafter taken by the officers and executive committees of the corporate defendant in refusing to accept Marku as a delegate was proper under the constitution and bylaws of the voluntary association of which he, Marku, was a member, until such matter could be presented to the convention to be held in Lorain, Ohio, in September, 1952. At that convention, if the prior action taken by the officers and executive committee was lawful under the constitution and by-

laws of the corporate defendant, Marku could not be a delegate or represent, on the floor of the convention, his branch society. The action taken by the convention in voting his expulsion as a delegate, hence. was proper.

Under what authority and by what right could the new loyalty affidavit be required of Marku and the officers of "Traian & Iuliu Maniu"? This question must be answered in favor of the authority of the corporate defendant, for the following reasons:

First, by the authority of the resolution of the convention of September, 1948, it was directed that a loyalty affidavit of some form be presented to each newly elected officer of the corporate defendant and the newly elected officers of the member societies.

Second, the power, duty and authority to prepare a form of loyalty affidavit rested with the officers of the corporate defendant.

Third, loyalty not alone to the Unted States was in contemplation of the convention, but loyalty also to the corporate defendant and its member societies; hence, the officers and executive committee merely followed the form of eligibility for office set out in the bylaws (Article VI, Section 6), which were as follows:

"The active members of the member societies who fulfill all the requirements of the constitution and bylaws, shall have the right to be elected to any office of the member society or to the central organization, excepting when the constitution and bylaws otherwise provide.

"The following are not eligible to be elected to office:

"(a) Those sentenced to prison for major crimes.

"(b) Those who are found guilty of moral turpitude, and who have caused the member societies or the central organization any moral and material losses.

"(c) Those under indictment or accusation by any forum of the member societies or of the central organization."

We have, above, discussed the power and authority of the executive committee and the convention of September, 1952, to reject Novak N. Marku as an officer and a delegate of his branch society, "Traian & Iuliu Maniu." Did that convention have the right to expel Marku as a member of his society and cancel his benefit certificate or policy? (He was tendered the cash surrender value of his policy but refused to accept it.)

It is one of the declared purposes of the organization herein (Union & League R. S. A.. Inc.,), as provided by its constitution, Article III (a), "to compensate its members by means of benefits in case of injury and accident, and their beneficiaries in case of death." Only "active" or "passive" members may contract for benefits (insurance).

It is also provided in Article IV, Section I, of the bylaws that "Every member is obliged to observe the constitution and bylaws of the U. & L. R. S. A., Inc.," In accord with Article IX, Section 2, of the bylaws, "any changes, additions or amendments to said articles of incorporation, constitution and bylaws and rules and regulations of the central organization, duly made or enacted subsequently to the issuance of said benefit certificate, shall be binding upon the member * * *." It is also further provided in Article VII. Section 3, of the bylaws, that the regular convention of the U. & L. R. S. A.. Inc., which is the highest governing body of this organization, may "punish by penalty, fine, passivity or expulsion, those found guilty of violating the constitution, bylaws or insurance laws; and it shall have

the power to do and perform any and all other acts and things which it deemed essential to the welfare and perpetuity of the organization."

In the light of the broad powers of the convention of U. & L. R. S. A., Inc., and the action taken thereunder at the meeting held in Lorain, Ohio, in September, 1952, the appellant, Marku, was lawfully expelled, and his benefit certificate or policy properly cancelled.

Does Marku have a right to inspect the books, records and financial reports of the corporate defendant, as requested by him in July, 1952?

There is no specific provision in the constitution or bylaws which permits a member of a branch society to examine the books and records of the corporate defendant. Provision is made, however, by Article II, Section II, of the bylaws for a member society to "request any information from the central office. The office shall promptly give written replies to all requests."

The statutes of Ohio with regard to fraternal insurance, in effect when Marku made his request to inspect the books, were §9426 et seq., GC.; and §9406 thereof gave to the superintendent of insurance power to examine into the affairs of the corporate defendant.

It should be remembered that the petition which seeks to compel such examination, was filed by Marku after he ceased to be a member of the society; and since we have determined that his expulsion and the subsequent cancellation of his benefit certificate were proper, this court cannot order an examination of the records, even though we assumed that a member of a fraternal benefit society has such a right.

For the reasons above set out, the appellant, Marku, is not entitled to the relief he seeks in this court.

The amended petition is dismissed, at the costs of appellant.

DOYLE, PJ, and STEVENS, J, concur.